UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNIQUE LOGISTICS ) <br> INTERNATIONAL (ATL), INC., ) <br> ET AL., ) <br> ) <br>        PLAINTIFFS ) <br> ) <br> v. ) <br> ) <br> THE FORESIDE GROUP, LLC, ) <br> ET AL., ) <br> ) <br>        DEFENDANTS ) | CIVIL NO. 08-08-P-H |

DECISION AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

These cross-motions for summary judgment raise two issues concerning the interpretation of a personal guarantee: (1) Whether there is a dollar cap on the guarantee; and (2) Whether the guarantee includes amounts for which the holder of the guarantee is obligated (on behalf of the principal) to third parties. I conclude that there is no dollar cap, but that the summary judgment record does not permit me to decide whether obligations to third parties are covered. Accordingly, the plaintiff Unique Logistics International (ATL), Inc.'s ("Unique Atlanta") motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The defendant Mark E. Woodsum's motion for summary judgment is **DENIED**.

FACTS AND PROCEDURAL HISTORY

Unique Atlanta is a licensed freight forwarder that provides transportation and customs brokerage services for entities shipping cargo

internationally.  Unique Atlanta's Statement of Material Facts Not in Dispute, ¶¶ 1–2 (Docket Item 22) ("Pl.'s SMF"); Def.'s Opposing Statement of Material Facts, ¶¶ 1–2 (Docket Item 33) ("Def.'s Opp'n SMF").  The defendant The Foreside Group, LLC, ("Foreside") imports various items from abroad to sell in the United States.  Unique Atlanta as a freight forwarder made shipping arrangements for Foreside's cargo.  Pl.'s SMF ¶ 25; Def.'s Opp'n SMF ¶ 25.  The individual defendant Mark E. Woodsum ("Woodsum") is Foreside's chief executive officer.  Pl.'s SMF ¶ 3; Def.'s Opp'n SMF ¶ 3.  On July 31, 2007, Woodsum signed the following personal "Guarantee":

> In exchange for a $50,000 line of credit and net 30 day terms, the undersigned personally and individually guarantees the payment of any outstanding balances and obligations of The Foreside Group, LLC, (TFG) due to Unique Logistics International (Atlanta) Inc., (ULI) and agree that I am personally obligated to perform all of the terms of, and make all payments to ULI required by the agreement of which this company is a part.  This personal guarantee automatically terminates on 28 Feb 2008, to be replaced by terms and conditions governing the relationship that will then be mutually agreed upon by these two parties, assuming TFG has then met all of its obligations in this agreement.  If not, then the agreement would endure until which time TFG has done so and paid its balance to zero.

Unique Atlanta's Mem. in Support of Mot. for Summ. J., Ex. 3 (Docket Item 21-3).  The other two plaintiffs, Unique Logistics International (H.K.) Ltd. and ULI Ocean Consolidators (HK) Ltd., are affiliated entities of Unique Atlanta that provide a variety of international cargo transportation services.  Pl.'s SMF ¶ 23; Def.'s Opp'n SMF ¶ 23.  The "arrangement" between Unique Atlanta and Foreside was that Foreside would pay Unique Atlanta for all transportation and customs brokerage services.  Pl.'s SMF ¶ 26; Def.'s Opp'n SMF ¶ 26.  But

Woodsum says that he was never personally aware of any arrangement by which Foreside would pay Unique Atlanta for services rendered by Unique Atlanta's affiliates and that he never agreed to guarantee any obligations owed to Unique Atlanta's affiliates. Def.'s Opp'n SMF ¶ 60. In the past, Foreside has paid Unique Atlanta and has never paid the other two companies. Pl.'s SMF ¶¶ 31–32; Def.'s Opp'n SMF ¶¶ 31–32.

Foreside defaulted in its payments to Unique Atlanta, beginning in October 2007. Pl.'s SMF ¶ 35; Def.'s Opp'n SMF ¶ 35. (It has also defaulted in this lawsuit.) Unique Atlanta now seeks to enforce its guarantee against Woodsum in the amount of $129,012.04.[1] Woodsum resists, arguing that the Guarantee was limited to $50,000 or that extending more than $50,000 credit to The Foreside Group voided the Guarantee; and that parts of the requested recovery are really for amounts due to entities other than Unique Atlanta and are therefore not recoverable under the Guarantee. Unique Atlanta and Woodsum both seek summary judgment.

## ANALYSIS

### *(1) Dollar Cap*

Woodsum argues that his Guarantee is capped at $50,000. The plain language of the Guarantee is to the contrary, and there is no need for extrinsic evidence. It is true that by signing the Guarantee, Woodsum contractually secured a $50,000 line of credit for Foreside. But nowhere did he limit his

---

[1] Originally, $135,027.52, but reduced by Foreside goods that Unique Atlanta seized and sold. Unique Atlanta's Reply Mem. in Support of Mot. for Summ. J., at 7–8 (Docket Item 35).

obligation to that $50,000.  Instead, the Guarantee obliges him to pay "any" obligations of Foreside and, in return for that, he received the commitment of a $50,000 line of credit.  It would have been a simple matter to insert a dollar cap on the guarantee and on Woodsum's personal exposure, but the parties did not do that.

Alternatively, Woodsum argues that Unique Atlanta breached the guarantee by extending more than $50,000 in credit to Foreside.  But nothing in the Guarantee caps Unique Atlanta's authority to extend credit to Foreside; it only caps Unique Atlanta's *obligation* to extend credit ($50,000).  Thus, as in Bumila v. Keiser Homes of Maine, Inc., 696 A.2d 1091, 1094 (Me. 1997), I conclude that Unique Atlanta did not make a material alteration to the principal contract.  Partial summary judgment shall issue that there is no dollar cap on the amount of Woodsum's guarantee.

*(2)  Whose Receivables Does the Guarantee Cover?*

In Maine, guarantees are "governed by the same rules of construction as other contracts."  Id. (quoting Rosenthal v. Means, 388 A.2d 113, 114 (Me. 1978)).  "Whether a contract is ambiguous is a question of law . . . ."  Id.

Here, the Guarantee is ambiguous as to whether it covers only obligations for services provided directly by Unique Atlanta to Foreside or also any services procured by Unique Atlanta and provided by Unique Atlanta's affiliates.  The Guarantee covers "payments to ULI required by the agreement of which this company is a part," but no one has explained what that nonsensical phrase means.  Otherwise, the Guarantee makes Woodsum personally liable

4

for "any outstanding balances and obligations of The Foreside Group, LLC, (TFG) due to Unique Logistics International (Atlanta) Inc."

Initially, in its unsuccessful motion for attachment, Unique Atlanta argued that there was a contract between Foreside and the plaintiffs by which Unique Atlanta engaged third parties like the two related entities and paid customs duties, then billed Foreside.[2] But Woodsum denied the existence of any such contract, and Unique Atlanta has never produced such a document. Now, Unique Atlanta talks in terms of an "arrangement" and an industry practice, but has not argued that the summary judgment record permits me to conclude that the arrangement or practice rose to the level of contract.[3]

The extrinsic evidence is insufficient to resolve the ambiguity in the phrase "due to Unique Logistics International (Atlanta) Inc." on summary judgment. See Nadherny v. Roseland Prop. Co., 390 F.3d 44, 49–50 (1st Cir. 2004) ("if, despite the ambiguity, no reasonable person could interpret the contract as one party does, the court may enter [summary] judgment against that party"). In its initial presentation for summary judgment, Unique Atlanta describes an "arrangement" with Foreside (before Woodsum signed the Guarantee) to pay Unique Atlanta for all transportation and customs brokerage services (including services provided by Unique Atlanta's affiliates). Unique Atlanta then, in its Reply Memorandum and supplemental declaration,

---

[2] "In accordance with the contract between Foreside and the plaintiffs, the amounts owed by Foreside for these services are payable to Unique Atlanta." Aff. in Support of Pls.' Mot. for Pre-J. Attach. and Attach. on Trustee Process, ¶ 3 (Docket Item 4-2).

[3] There are various ways of forming contracts, including written documents, oral agreements, and custom and practice. See EIMSKIP, The Iceland Steamship Co. v. Atlantic Fish Market, Inc., 417 F.3d 72, 76 (1st Cir. 2005).

5

presents evidence to characterize the "arrangement" as "well-established custom." See Supp. Decl. of Robert C. Shaver, ¶¶ 3–5 (Docket Item 39). Woodsum maintains that he was unaware of and did not consent to any such "arrangement" or "custom" and, moreover, that the language of the Guarantee cannot be interpreted to cover Foreside's obligations for services provided by entities other than Unique Atlanta. See Def.'s Opp'n SMF ¶ 60; Reply in Support of Def.'s Cross-Mot. for Summ. J., at 2–4 (Docket Item 40).

The summary judgment record does not permit me to determine that all the amounts sought by Unique Atlanta are "balances and obligations" "due to" Unique Atlanta.[4] On this issue, therefore, both motions for summary judgment are **DENIED**.

**SO ORDERED.**

**DATED THIS 25TH DAY OF JUNE, 2008**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[4] As Woodsum argues, there must be some limit on the phrase. It cannot reasonably be interpreted as an open avenue for other creditors to sell their Foreside receivables to Unique Atlanta, thereby coming under the umbrella of Woodsum's Guarantee.

6